# YALE LOCK MANUFACTURING COMPANY
## *v.* JAMES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 162.   Argued February 3, 6, 1888. — Decided April 9, 1888.

A patent granted in 1871, for an improvement in post-office boxes was reissued in 1872, and again in 1877, and again in 1879.   The original patent limited the invention to a metallic frontage made continuous by connecting the adjoining frames to each other, and not merely to the woodwork. There was no mistake, and the original patent was not defective or insufficient, in either the descriptive portion or the claims.   In the progress of the first reissue through the Patent Office, the applicant, on its requirement, struck out of the proposed specification everything which suggested any other mode of fastening than one by which the frames were to be fastened to each other: *Held*, that the first reissue could not have been construed as claiming any other mode of fastening; that therefore the third reissue could not be construed as claiming any other mode of fastening; and that, as the defendant's structures would not have infringed any claim of the original patent, they could not be held to infringe any claim of the third reissue.

IN EQUITY, to restrain infringement of letters patent.   Decree dismissing the bill.   Complainant appealed.   The case is stated in the opinion of the court.

*Mr. Frederic H. Betts* for appellant, on the question of the law as to reissues, made the following points in his brief:

We understand that this court has construed the provisions of law regulating reissues, as follows:

(1) That the patentee can reissue in case it shall appear that "the original patent embodied as the invention *intended to be secured* by it what the claims of the reissue are intended to cover." *Parker & Whipple Co.* v. *Yale Clock Co.*, 123 U. S. 87, 89 : or he may reissue "*to meet a possible construction of the original,* whereby the patentee would be precluded from a use of his process where it was evidently intended to be applied." *Eames* v. *Andrews*, 122 U. S. 40, 63 : or to remove "ambiguity or obscurity." *Campbell* v. *James*, 104 U. S. 356, 370.

We understand that this means that the original patent must show the invention claimed in the reissue, and, in it or in the papers accompanying it, must indicate that the inventor *intended* and *attempted* to secure, as his own, and did not *abandon* the invention claimed in the reissue.

We do *not* understand that it must appear that the invention claimed in the reissue was *actually* in fact *secured* by the claims of the original patent, if those claims be critically construed.

On the contrary, we understand that the inoperativeness of the original patent may consist in the *failure* of the original claims, when construed critically, to claim that which is seen to be the real invention.

(2) That the patentee may not only (if his original "intention" or "attempt" be found to exist) introduce amendments to the specification, but also, *if he applies in due season for a correction, enlarge* his claim, and claim something beyond what the critical construction of his original claim would give him.

Thus, in *Lockwood* v. *Morey*, 8 Wall. 230 (cited with approval, 122 U. S. 63), where the inventor had been induced to *limit* his original claim by the mistake of the Commissioner of Patents, he was allowed to remove the limitations by reissue.

Thus, in *Campbell* v. *James*, 104 U. S. 356, 371, when this court said, "of course, if by inadvertence, accident or mistake, incorrectly committed, the claim does not *fully assert* or de-

fine the patentee's right in the invention specified in the patent, a speedy application for its correction, before adverse rights have accrued, *may be granted*."

Thus, in *Miller v. Brass Co.*, 104 U. S. 350:

"If a patentee who has no corrections to suggest in his specification except to make his *claim broader and more comprehensive* uses due diligence in returning to the Patent Office, and says, 'I omitted this,' or 'my solicitor did not understand that,' his application may be entertained, and on a proper showing, correction *may be made*. But it must be remembered that the claim of a specific device or combination and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed. . . . The legal effect of the patent cannot be revoked *unless the patentee surrenders it and proves that the specification was framed by real inadvertence, accident or mistake* without any fraudulent or deceptive intention on his part; and this should be done with due diligence and speed. . . . Nothing but a clear mistake, or inadvertence, and a speedy application for its correction is admissible when it is sought *merely to enlarge* the claim."

Thus in *Mahn v. Harwood*, 112 U. S. 354, 363:

"If a patentee has *not claimed as much as he is entitled to*, he is bound to discover the fact in a reasonable time, *or he loses all right to a reissue*."

And again:

"As we have already stated, no invariable rule can be laid down as to what is reasonable time within which the patentee should seek for the correction of a claim *which he considers too narrow*. In *Miller v. Brass Co.*, by analogy to the law of public use before an application for a patent, we suggested that a delay of two years in applying for such correction should be construed equally favorable to the public. But this was a mere suggestion, by the way, and was not intended to lay down any general rule. Nevertheless, the analogy is an apposite one, and we think that excuse for any longer delay than that should be made manifest by the special circumstances of the case."

(3) That the finding of the Commissioner of Patents upon the question of fact whether the original defect arose by inadvertence, accident or mistake, is a conclusive one, unless the *possibility* of the existence of any such inadvertence, accident or mistake is found to be excluded by an examination of the original papers.

Thus in *Mahn* v. *Harwood*, p. 358.

"It was not intended then (*i.e.* in *Miller* v. *Brass Co.*) and is not now to question the conclusiveness in suits for infringements of patents, of the decisions of the Commissioner on questions of fact necessary to be decided before issuing such patent, except as the statute gives specific defences in that regard."

And again : p. 360.

"Conceding that it is for the Commissioner of Patents to determine whether the insertion of *too narrow a claim* arose from *inadvertence, accident or mistake,* unless when the matter is manifest from the record," yet that it was for the court to decide the question of *diligence.*

(4) That on the question of due diligence in applying for a reissue, such diligence is *prima facie* proved, if the application is *within two years.*

Thus in *Mahn* v. *Harwood*, p. 363.

"We think that excuse for *any longer delay than that* should be made manifest by the special circumstances of the case."

And in *Wollensak* v. *Reiher*, 115 U. S. 96, 100, this Court said that a delay of *more than* two years in applying for a reissue with broader claims made the action "*prima facie unlawful.*"

May it not be said that if the *delay* was *less* than two years that the action is *prima facie lawful?*

We shall endeavor to show that the present case falls within the provision of the law as above construed.

In other words, we shall show that, taking the whole history of the original specification together, it would be plain to one skilled in the art (and it is to those only that the specification is addressed), what the real invention of Yale was, and that that real invention is the one described in the second claim of reissue 8783.

That the second claim of the original patent is either for that very invention (the first one is broader) or, if upon a critical construction it should be held that it was confined by its phraseology to certain details of minor importance, yet that it was, at least, so uncertain and ambiguous, and therefore "inoperative," that the ambiguities and uncertainties and limitations could be removed by reissue (especially by one applied for within seven months thereafter), and the claim could be and was restated so as to conform to what could be seen to be the real invention.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit of equity, brought by the Yale Lock Manufacturing Company, a Connecticut corporation, against Thomas L. James, to recover for the alleged infringement of reissued letters-patent No. 8783, granted to the plaintiff, as assignee of S. N. Brooks, administrator of L. Yale, Jr., deceased, July 1, 1879, for an "improvement in post-office boxes," on an application for a reissue filed May 23, 1879, (the original patent, No. 119,212, having been granted to Silas N. Brooks, administrator of Yale, September 19, 1871, on an application filed September 30, 1868; and having been reissued to said Brooks, as administrator, July 9, 1872, as No. 4963, on an application for reissue filed May 7, 1872; and having been again reissued to said Brooks, as administrator, April 24, 1877, as No. 7625, on an application for reissue filed April 19, 1875). The Circuit Court dismissed the bill, and the plaintiff has appealed from its decree.

Among other defences, the answer sets up that each of the three reissues was not for the same invention as the original patent, but contained material new matter, and was therefore invalid.

Reissue No. 8783 was the subject of a suit in equity, brought in the Circuit Court of the United States for the District of Connecticut, by the present plaintiff, against the Scovill

Manufacturing Company, in which Judge Shipman, in June, 1880, gave a decree for the plaintiff as to the first and second claims of the patent.   18 Blatchford, 248.

The original patent contained the following description of the invention: "This invention relates to an improvement in *the construction of* the fronts of post-office boxes, and consists in making said fronts, including the doors and box frames, of metal, *and in securing the frames to the wooden pigeon holes by rivets connecting the frames with each other at top, bottom, and sides.* The body of *these* boxes is to be made of wood, in the usual manner, *namely*, a series of pigeon holes, but the front of the box and the door frame are made of iron or other suitable metal.   Each door frame or box front is so made that it aids in covering the edge of the wooden partition or pigeon holes, and is connected with the other frames above, below, and on each side of it in such manner that the frames make a continuous frontage, no part of which can be removed (from the outside) without pulling down other parts *and breaking the wood-work, so that a surreptitious removal of the front of any box, in order to get possession of its contents, is practically impossible.* . Each frame, made, as before stated, of metal, has all around it a flange, *a a*, which protects the outside of the wood-work.   The sides of the frame *b b*, enter and fit closely against the wood forming the pigeon holes, and may be continuous or notched out at intervals; and each frame has attached to it one leaf of two or more hinges, *c c.*   The door *is of iron*, solid *at top*, where the lock *d* is attached, and having an opening, *e*, below, in which a plate of glass is secured. I prefer to locate rods *f f* behind the plate, to prevent the introduction of a hand if the glass be broken, *and so to form* the door that, when shut, it enters within the frame, (*see g g,*) so that it cannot be lifted from its hinges.   When the frames are all in place, each frame is riveted through the wood-work to its four neighbors, (see *h h*, Fig. 2,) and *thus* a continuous *iron* frontage *is formed.   Each* door has a small spring bolt, *i*, and a lock, *d*, attached to it, the two operating together and forming, in the hands of the postmaster, a perfect safeguard against all entrance to the box by means of the key, as is more partic-

ularly set forth in *my application for a patent therefor, made equal date with this.*"

That patent had two claims, as follows: "1. The combination of several box frames with each other and with pigeon holes, as described, by means of rivets passing through the frames, and the wood-work entering between the said frames, the combination being substantially as described. 2. *The above, in combination with the flanges, making part of the frames and protecting and inclosing the exterior of the wood-work, substantially as set forth.*"

The first reissue, No. 4963, contained the following description of the invention: "This invention relates to an improvement in the fronts of post-office boxes, and consists in making said fronts, including the doors and box frames, of metal, *said box frames being constructed so as to overlap and cover, in whole or in part, the front edges of the wooden pigeon holes to which they are affixed.* The body of *the* boxes is to be made of wood in the usual manner, viz., a series of pigeon holes, but the front of the box and the door frame are made of iron or other suitable metal. Each door frame or box front is so made that it aids in covering the edge of the wooden partition or pigeon holes, and is connected with the other frames above, below, and on each side of it in such manner that the frames *will* make a continuous frontage, no part of which can be removed from the outside without pulling down other parts. Each frame, made, as before stated, of metal, has all around it a flange, *a a*, which protects the outside *or edges* of the wood-work. The sides of the frame *b b* enter and fit closely against the wood forming the pigeon holes, and may be continuous or notched out at intervals; and each frame has attached to it one leaf of two or more hinges, *c c*. The door *may be of any desirable metal*, solid where the lock *d* is attached, and having an opening, *e*, below, in which a plate of glass is secured. I prefer to locate rods *f f* behind the plate, to prevent the introduction of a hand if the glass be broken. The door *is so constructed* that, when shut, it enters within the frame, so that it cannot be lifted from its hinges. When the frames are all in place, each frame is riveted through the wood-work to its four

neighbors, (see *h h,* Fig. 2,) and *in this way forms* a continuous *metal* frontage. *The* door *for each frame* has a small spring bolt, *i,* and a lock; *d,* attached to it, the two operating together and forming, in the hands of the postmaster, a perfect safe-guard against all entrance to the box by means of the key, as is more particularly set forth in *letters-patent granted to me on the 24th day of October, 1871, and numbered 120,177.*"

That reissue contained two claims, as follows : " 1. The combination of several box frames with each other and with pigeon holes, as described, by means of rivets passing through the frames, and the wood-work entering between the said frames, the combination being substantially as described. 2. *The combination of two or more metallic frames and doors and locks with pigeon holes, said frames having flanges, which protect and inclose wholly or in part the front edges of said pigeon holes.*"

In order to a comparison of the specification and claims of the first reissue with the specification and claims of the original patent, the parts of each which are not found in the other are above put in italics.

The specification and claims of reissue No. 8783 are as follows : " This invention consists in an improvement in the construction of post-office boxes, and its chief feature is the combination of a tier of pigeon holes made of wood with a continuous frontage of metal, such frontage consisting of doors and their frames, which latter cover the ends of the boards which form the pigeon holes. A series of wooden pigeon holes, open at the rear, and covered at the front, or on the outside by a permanent glass front, is very old, and such a series was used for post-office boxes, and in hotels as a receptacle for keys, cards, letters, &c. There has also been in use a series of wooden pigeon holes, each provided at one end with a door, as described in the patent granted to Jacob Beidler, May 28, 1866; but in this patent the door is described as hinged to the wood, and the construction is consequently inse-cure, as an ordinary pocket knife or small chisel will, even in inexperienced hands, suffice to cut away the wood or pry off the door, so that the boxes may be entered. Pigeon holes

made of iron or other metal are difficult to construct and very costly; but such pigeon holes, each provided with an ordinary metal door, would be sufficiently secure. Such a degree of security at a comparatively low cost is attained by covering the front of a series of wooden pigeon holes with a continuous metallic frontage, that is, a frontage which presents a continuous surface of metal, or, in other words, a surface which covers the ends of the wooden pigeon holes in such manner that those portions of the wood to which the metallic frames are attached cannot be attacked when the doors making part of the frontage are closed. In constructing Yale's invention the body of the boxes or the series of pigeon holes is to be made of wood in any usual manner, and the fronts thereof, viz. the doors and their frames, are to be made of iron or other suitable metal. Each door frame is of such size that it aids in covering the ends of the wooden partitions that form the pigeon holes to which it is applied, and these frames (see Fig. 1) are of such size and shape, that, where a series of them are combined with a series of pigeon holes, they cover the whole of the ends of the wood. Each door frame is a plate of metal, *a a*, which, when in place, overlaps a part of the ends of the wood-work surrounding the pigeon hole, the outside of the frame inclosing a greater area than the orifice of the pigeon hole, and each frame has an ear, *b b*, which enters the pigeon hole; but this ear may be either continuous or notched out at intervals. The door is of iron or other metal, solid at top and having an opening, *e*, below, in which a plate of glass is secured, and is hinged to the frame as at *c c*. It is preferable to locate rods *f f* behind the plate, so as to prevent the introduction of a hand if the glass be broken, and so to form and hinge the door that, when shut, it enters within the frame, so that it cannot be lifted from its hinges when shut. When the frames are all in place, each frame is riveted or bolted to the woodwork, to fasten it thereto, and is also riveted or bolted to its four neighbors, to secure the frames to each other. (See *h h*, Fig. 2.) Thus each frame is secured to the wood-work, so that it cannot be removed till the rivet or the wood-work is cut away or broken. When all the frames are in place, a continu-

ous metallic frontage protecting the wood-work is presented upon the outside of the series of boxes, that is, the side where the public can approach the boxes. Each door has a lock attached to it, the bolt of which is actuated through the intervention of an arm, $k$, in the manner and for the purposes set forth in a patent granted for the invention of Linus Yale, Jr., on the 24th day of October, 1871, No. 120,177. An iron door in an iron frame is not claimed as of Yale's invention, as such doors have been used in safe vaults and for furnaces.

"What is claimed as the invention of said Linus Yale, Jr., deceased, is, 1. The combination, substantially as specified, of a series of metallic door frames and doors with a series of wooden pigeon holes, whereby a series of post-office boxes with a continuous metallic frontage is formed. 2. The combination, substantially as described, of a series of wooden pigeon holes with a series of metallic door frames and doors, and with rivets or bolts which attach the frames to the wood-work, whereby a continuous metallic frontage secured to the wood-work of pigeon holes is obtained. 3. The combination, substantially as described, of a series of wooden pigeon holes with a series of metallic door frames and doors, and with rivets or bolts which attach the frames both to the wood-work and to each other, the combination being substantially such as described. 4. The combination of a metallic door with a glass panel and with a frame to which the door is hinged, said frame being so constructed as to cover a part of the ends of the wooden partitions forming pigeon holes, and being applied thereto, the combination being substantially as specified. 5. The combination of a post-office box or pigeon hole, open at the rear, with a metallic frame and door to protect the front end of it."

Claims 4 and 5 were disclaimed by the plaintiff November 29th, 1880.

Claim 1 of the first reissue was the same as claim 1 of the original patent, while claim 2 of the first reissue was in these words: "2. The combination of two or more metallic frames and doors and locks with pigeon holes, said frames having flanges, which protect and inclose wholly or in part the front edges of said pigeon holes."

In the opinion of the Circuit Court in the present case, 22 Blatchford, 294, Judge Shipman says: "The defendant, as postmaster in the city of New York, and not otherwise, used in the post office, provided and equipped for him by the United States government, wooden post-office boxes, with metallic fronts and doors and open at the rear. They were manufactured by the Johnson Rotary Lock Company. The doors and door frames made a continuous metallic frontage. The door frames were secured to each other and to the wood-work as follows: At about the middle of each vertical edge of each door frame there was a triangular hole, which, with the corresponding hole in the adjoining door frame, made a rectangular hole, through which the metal fastening bolt, completely filling such hole, was passed, the heads of such bolts overlapping the contiguous edges of adjoining metallic fronts, and the bolt itself passing through the wooden partition between the adjoining pigeon holes, and being secured at the back thereof, within the post-office room, by a nut screwed upon the end of the bolt. There were other boxes constructed substantially as above described, excepting that the metal front of each pigeon hole was fastened to the wood-work by means of flanges and screws, but the screws which attached the frames to the wood-work did not attach the frames to each other. Neither series of boxes would have infringed either claim of the original patent. Each series infringes the 1st and 2d claims of the present reissue, unless these claims are to receive a construction which shall compel the metallic frontage to be made continuous by rivets, bolts, or fastenings which shall attach the frames both to the wood-work and to each adjoining frame. The plaintiff insists that these claims should not receive such a construction, because it has been found that the invention of the specification of the reissue, although a broader one than was described in the original patent, is the invention which the history of the art and the patent show should have been described, and because the first reissue was promptly applied for, and, as issued, included in its second claim, in the view of the plaintiff, the same invention which is described in the 1st and 2d claims of the reissue. The defendant

says, among other things, that, since the case of *Miller* v. *Brass Co.*, 104 U. S. 350, and *James* v. *Campbell*, 104 U. S. 356, it has been settled by the Supreme Court, that the Commissioner of Patents, in allowing the 1st and 2d claims, exceeded his jurisdiction, because the invention which was first applied for and was 'complete in itself,' was clearly, specifically, and fully described in the original specification and in the claim, and an expanded claim would necessarily include an invention which was not sought to be described in the original patent; and, furthermore, that there could have been no inadvertence or mistake, because the original patent and the accompanying documents show that the patentee 'did not intend it' (the patent) 'to embrace any such broad invention' as was described in the reissue. The defendant also says, that the patentee, in his application for the first reissue, ineffectually endeavored to alter the description of the invention, so as to omit the fastening of the door frames to each other as a necessary integral part of the invention, and that the second claim of the first reissue cannot fairly be construed to permit such omission, and, therefore, that the patentee is estopped from insisting upon a broad construction of the 1st and 2d claims of the present reissue, and that these claims are objectionable on account of the laches of the patentee. The 'file wrapper and contents' of the first reissue were not a part of the record in the Scovill case."

In order to show the changes made in the specification and claims of the first reissue, as they passed through the Patent Office, the specification and claims of that reissue as granted, and the specification and claims of the same as applied for, are here placed in parallel columns, the parts of the latter which are not contained in the former being in italics and brackets, and being numbered severally from 1 to 8:

| *As Applied For.* | *As Granted.* |
| --- | --- |
| " This invention relates to an improvement in the fronts of post-office boxes, and consists in making said fronts, | " This invention relates to an improvement in the fronts of post-office boxes, and consists in making said fronts, |

including the doors and box frames, of metal, said box frames being constructed so as to overlap and cover, in whole or in part, the front edges of the wooden pigeon holes to which they are affixed [¹ *and in securing said frames to said pigeon holes by rivets or screws*]. The body of the boxes is to be made of wood in the usual manner, viz., a series of pigeon holes, but the front of the box and the door frame are made of iron or other suitable metal. Each door frame or box front is so made that it aids in covering the edge of the wooden partition or pigeon holes and [² *may be*] connected with the other frames above, below, and on each side of it in such manner that the frames will make a continuous frontage, no part of which can be removed from the outside without pulling down other parts, [³ *or the several frames may be secured or otherwise fastened directly to the wooden pigeon holes, each one independent of the other, if desired.*] Each frame made, as before stated, of metal, has all around it a flange, *a a*, which protects the outside or

including the doors and box frames, of metal, said box frames being constructed so as to overlap and cover, in whole or in part, the front edges of the wooden pigeon holes to which they are affixed. The body of the boxes is to be made of wood in the usual manner, viz., a series of pigeon holes, but the front of the box and the door frame are made of iron or other suitable metal. Each door frame or box front is so made that it aids in covering the edge of the wooden partition or pigeon holes, and is connected with the other frames above, below, and on each side of it in such manner that the frames will make a continuous frontage, no part of which can be removed from the outside without pulling down other parts. Each frame made, as before stated, of metal, has all around it a flange, *a a*, which protects the outside or edges of the wood-work. The sides of the frame *b b* enter and fit closely against the wood forming the pigeon holes, and may be continuous or notched out at intervals, and each frame has attached to it one leaf of two or more hinges, *c c*. The door

edges of the wood-work. The sides of the frame *b b* enter and fit closely against the wood forming the pigeon holes, and may be continuous or notched out at intervals, and each frame has attached to it one leaf of two or more hinges, *c c*. The door may be of any desirable metal, solid where the lock *d* is attached, and having an opening, *e*, below, in which a plate of glass is secured. [*⁴ Cast with the door and over the opening e for glass may be a network or ornamental open work, admitting light, and at the same time preventing the introduction of a hand if the glass be broken, or rods f f may be located behind the plate for the same purpose.*] The door is so constructed, that, when shut, it enters within the frame, [*⁵ see g g,*] so that it cannot be lifted from its hinges. When the frames are all in place, each frame [*⁶ may be*] <sup>is</sup> riveted through the wood-work to its four neighbors, (see *h h*, Fig. 2,) and in this way form a continuous metal frontage, [*⁷ or each separate frame may be screwed or otherwise fastened to the wood-work inde-*

may be of any desirable metal, solid where the lock *d* is attached, and having an opening, *e*, below, in which a plate of glass is secured. I prefer to locate rods *f f* behind the plate, to prevent the introduction of a hand if the glass be broken. The door is so constructed, that, when shut, it enters within the frame, so that it cannot be lifted from its hinges. When the frames are all in place, each frame is riveted through the wood-work to its four neighbors, (see *h h*, Fig. 2,) and in this way forms a continuous metal frontage. The door for each frame has a small spring bolt, *i*, and a lock, *d*, attached to it, the two operating together, and forming, in the hands of the postmaster, a perfect safeguard against all entrance to the box by means of the key, as is more particularly set forth in letters-patent granted to me on the 24th day of October, 1871, and numbered 120,177.

*pendent of its neighboring frames.*] The door for each frame has a small spring bolt, *i*, and a lock, *d*, attached to it, the two operating together, and forming, in the hands of the postmaster, a perfect safe-guard against all entrance to the box by means of the key, as is more particularly set forth in letters-patent granted to me on the 24th day of October, 1871, and numbered 120,177.

"What I claim as the invention of the said Linus Yale, Jr., deceased, is, First. The combination of several box frames with each other and with pigeon holes, as described, by means of rivets passing through the frames and the wood-work entering between the said frames, the combination being substantially as described. Second. The combination of two or more metallic frames and doors and locks with pigeon holes, said frames having flanges, which protect and enclose, wholly or in part, the front edges of said pigeon holes. [⁸ Third. *The combination of several metallic box frames with each other and with pigeon holes, said box frames being secured to*

"What I claim as the invention of the said Linus Yale, Jr., deceased, is, 1. The combination of several box frames with each other and with pigeon holes, as described, by means of rivets passing through the frames and the wood-work entering between the said frames, the combination being substantially as described. 2. The combination of two or more metallic frames and doors and locks with pigeon holes, said frames having flanges, which protect and enclose, wholly or in part, the front edges of said pigeon holes."

*said pigeon holes independ-*
*ently of each other, by means*
*of screws or other similar*
*fastening, as described.]* "

. On the 8th of May, 1872, the Patent Office examiner called the attention of the applicant to the fact that the following matters in the new specification were not warranted by the original patent, namely: the words "or screws," in the part marked "1," the words "may be," in the parts marked "2" and "6," the parts marked "3," "4," and "7," and the third claim being the part marked "8."

On the 9th of May, 1872, the applicant appealed to the Commissioner of Patents in person, because the examiner had refused to examine the case on its merits, in view of the introduction of such new matter; but, on the next day, the applicant virtually withdrew his appeal, by amending his application as follows: He erased part "1;" he erased the words "may be," in parts "2" and "6," and substituted in each case the word "is;" he erased parts "3" and "4" and substituted for the latter the words, "I prefer to locate rods $f\ f$ behind the plate to prevent the introduction of a hand if the glass be broken." He also erased part "7," and claim 3, part "8," and submitted the case for further action.

The application was then reconsidered, and twice rejected, and from the second rejection the applicant appealed to the examiners-in-chief, who reversed the decision of the examiner, and the reissue was granted, July 9, 1872.

In view of these facts, Judge Shipman, in his decision in the present case, said: "It is unquestionable that the patentee, when he made his original application, intended to say that his invention did not consist simply in making, by his combination of metallic doors, door frames, and wooden boxes, a continuous metallic frontage, but that it also consisted in the way in which the frontage was made continuous, viz. by the connection of the adjoining frames with each other. His definite and exact specification shows that he supposed that his patentable invention was thus limited. He described with precision and clearness, that his metallic frontage was to be

so constructed that the frames were to be fastened to each other at top, bottom, and sides, and not merely to the wood-work. 'A specific invention, complete in itself,' was described, 'fully and clearly, without ambiguity or obscurity.' Under the definitions which are given in the decisions which have been referred to, and in *Manufacturing Co.* v. *Ladd,* 102 U. S. 408, of the inadvertence, accident, or mistake which per-mits a reissue, when a patent is said to be inoperative on account of a defect or insufficiency in the specification, which arose through such inadvertence or mistake, and also of the nature of the defectiveness or insufficiency which is meant by the statute, there was no mistake, although the patentee might have fallen into an error of judgment, or into an erro-neous conclusion of fact; and, furthermore, the original patent, according to the definitions contained in the recent, and, per-haps, in the earlier cases, was not defective nor insufficient, either in its descriptive portion or in its claims. The second claim of the first reissue, construed in the light of the con-temporaneous facts which are shown in the 'file wrapper and contents,' cannot be fairly construed to mean a metallic front-age irrespective of the fastening of the frames to each other through the wood-work. Were this claim to be construed without study of the history of the application as it made its way through the Patent Office, and of the amendments which it was compelled to undergo, it would probably receive the construction which naturally belongs to the first claim of the present reissue. But the patentee abandoned, under pressure from the Patent Office, the clauses in the application which made the fastening of the frames to each other to be optional, and abandoned also a proposed third claim, which described the box frames as secured to the pigeon holes 'independently of each other, by means of screws or other similar fastening.' In view of the fact that the Patent Office excluded from the descriptive part of the specification suggestions of any other method of fastening than that by which the frames were to be fastened to each other, it would be singular if the intent of the Office was to include in the second claim such other method of construction. If this claim has properly, and the

applicant knew that it was intended to have, a narrow construction — and of this knowledge I think there can be little doubt — the plaintiff would not insist that the 1st and 2d claims of the present reissue ought, in view of the decision in *Miller* v. *Brass Co., supra* to be so construed as to be any broader than the 3d claim, which requires the combination of door frames, doors, and pigeon holes to be by means of rivets or bolts which attach the frames both to the wood-work and to each other."

It was held that there was no infringement, and, on that ground, the bill was dismissed.

We concur in these views of the Circuit Court, and in the result which it reached. In view of the numerous recent decisions of this court on the subject of reissued patents, it would serve no good purpose to expand or amplify the views so well expressed by the judge at circuit. They are supported by the decisions in *Miller* v. *Brass Co.,* 104 U. S. 350 ; *Mahn* v. *Harwood,* 112 U. S. 354 ; *Parker & Whipple Co.* v. *Yale Clock Co.,* 123 U. S. 87 ; *Matthews* v. *Iron Clad Mfg. Co.,* 123 U. S. 347.

Our conclusion makes it unnecessary to consider the defence raised in the answer, and urged in argument, that the post-office boxes used by the defendant were used by him as postmaster of the United States at the city of New York; that the boxes were the property of the United States and were rented by it to sundry persons; that the rent was a part of the postal revenue of the United States and was not a source of personal emolument to the defendant; that it was not within the power of the defendant to remove or alter the boxes; and that the use of such boxes at the post office, while the defendant was postmaster, was not an infringement of the patent by him and did not make him liable to this suit.

*Decree affirmed.*