## CORNELL *v.* WEIDNER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 240. Argued April 19, 1888. — Decided April 30, 1888.

A patent for a bushing, or tapering ring of metal, for the bungs of casks, with a screw-thread on its outer surface, and with a notched flange at the edge, so as to enable the bushing to be forced into place by a wrench having a projection to fit the notch, was reissued, nearly seven years afterwards, for a bushing without any notch. *Held*, that the reissue was void.

BILL IN EQUITY for the infringement of letters patent. Decree dismissing the bill. Complainant appealed. The case is stated in the opinion.

*Mr. J. W. Merriam* for appellant. *Mr. John H. Whipple* was with him on the brief.

*Mr. George H. Lothrop* for appellee.

MR. JUSTICE GRAY delivered the opinion of the court.

This was a bill in equity for the infringement of a second reissue of letters patent. When the facts are understood, the case is clear.

The original patent, issued August 29, 1871, No. 118,517,

was for an "improvement in metallic bushings for the bungs of casks, etc., and in wrenches for operating the same;" and described the bushings thus: "A tapering thimble or ring of metal, provided with a flange, *b*, at its larger end, and having a screw-thread, *c*, on its outer surface, which screw-thread is cast on the bushing in the mould, and is capable of immediate use without other finishing. The flange *b* is rounded off at its edge, and is provided at some point in its extent with a V-shaped notch, *d*, extending in to the screw-thread."

It then described the wrench and its mode of operation as follows: " E represents the wrench-bar, consisting of the slotted plate *e* and the shank *f*. The metal of the shank, at its junction with the plate, forms a downward V-shaped projection, *l*, whose point extends forward toward the centre of the plate *e*. F represents a tapering core of metal, adapted to fit the bung-bushing *a*, and secured to the plate *e* by means of the bolt *h* and its nut. This core is made separable from the wrench-bar, in order that, by providing a number of cores of different sizes, the same wrench may be used for bushing of different diameters. Provision is also made by the slot *k*, for moving the bolt toward the angular projection *l*, which becomes necessary when a smaller core is substituted for a larger one.

" The wrench is applied by inserting the core into the opening through the bushing, and turning it until the projection *l* falls into the notch *d*. By means of the core the bushing is kept steady, and is readily prevented from assuming an oblique position in the bung-opening; at the same time the operator is enabled to get a better hold on the bushing than by means of the wrenches in common use, which are apt to slip from their seats when used on such difficult work as turning a rough-cast screw into place."

The single claim was in these words: " What we claim as our invention, and desire to secure by letters patent, is —

" The combination, with the notched bung-bushing *a*, of the wrench, consisting of the bar E having the slotted plate *e* and angular projection *l*, and the removable core F, substantially as specified."

It thus appears that the original patent described a bushing

with a V-shaped notch in the flange, and a wrench made with an angular projection to fit that notch, and applied by turning the wrench until the projection fell into the notch; and that all that the patentee claimed as his invention was the combination of the notched bushing with the wrench having a projection to fit it.

On August 6, 1872, the patent was reissued in two divisions, No. 5026 (not in this record) being for the wrench, and No. 5027 being for the bushing, describing it as "an angular ring of metal. This ring is made tapering on both its outer and inner sides, and is screw-threaded upon its outer side, by which means the same is secured within the aperture in the cask. This thread may be formed by a suitable tool, or may be formed in the mould, as found most advantageous. The larger end of the said ring is provided with a flange B, the outer surface or periphery of which is made in an ovolo shape, and is provided with a V-shaped notch d, which extends inward to a point near the body of the ring. The object of this notch is to allow a suitable wrench, adapted for the purpose, to engage therewith, whereby the said bushing may be turned into place without the wrench slipping from its seat, as would be the case with a bushing having a smooth surface."

The claim in that reissue was for "The screw-threaded metallic bung-bushing, made tapering upon both its outer and inner sides, and provided with the flange B having the V-shaped notch d, as and for the purpose described."

The specification and the claim of that reissue, as clearly appears upon its face, both treated the notch in the flange of the bushing as an essential element of the invention. Of the notch in that reissue it may be said, as this court, in a case decided at October Term, 1877, said of the notch described in the reissue for the wrench, that it was "vital in the invention covered by his patent. The notch is the point of engagement between the bushing and the wrench when the latter, operating as a lever, gives the former its circular motion and thus forces it home. Without this arrangement such motion could not be communicated and the desired result produced. Hence its importance in the scheme of the invention." *Schumacher v. Cornell*, 96 U. S. 549, 555.

On June 17, 1879, a second reissue, No. 8759, was obtained for the bushing, the material parts of the specification and the claim of which were as follows:

"Our invention relates to bushings for barrels; and consists of a short metallic tube in exterior form in shape of the frustum of a cone, slightly tapering. The outer surface is screw-threaded, to adapt it to be screwed forcibly into the bung-hole of the barrel, and to be held securely in place by the contact of the surfaces. The larger end of this tube is provided with an annular flange projecting outwardly, and adapted to rest, when the bushing is screwed to its place in the hole of the barrel, snugly upon the outer surface of the stave. The interior surface of the bushing is also made in the form of a frustum of a cone, and tapers uniformly from the exterior or flanged to the inner end of the bushing. This surface is made smooth and unbroken, and extends in such form quite through from one end of the bushing to the other, so that the wooden or compressible plug or bung to which it is adapted may have a ready and unobstructed entrance, and may pass, if necessary, beyond the inner end of the bushing, and have a uniform bearing-surface throughout the entire length of the bushing."

"Having thus described our invention, what we claim as new, and desire to secure by letters patent, is —

"A metallic bushing for the bung-holes of barrels, made with a flange adapted to rest on the outer surface of the stave, and with an exterior threaded and an interior smooth surface, both tapering from the flanged to the interior end, said inner surface being unbroken and unobstructed, and tapering uniformly from one end of the bushing to the other, as and for the purpose set forth."

The notch in the flange of the bushing is not mentioned either in the specification or in the claim of this reissue, although it is shown in the accompanying drawings, substantially as it was shown in the drawings of the original patent and of the former reissue.

The original patent and the first reissue having been distinctly limited to a bushing having a notch to aid in forcing

it into place, the second reissue, obtained nearly seven years later, for a bushing without any such notch, is an unwarrantable enlargement of the supposed invention, which, according to the now well settled law, renders the reissue void. *Yale Lock Co.* v. *James,* 125 U. S. 447, 464, and cases there cited.

The defendant's plea, that the second reissue was for a different invention from that described or claimed either in the original patent or in the first reissue, was therefore rightly adjudged good by the Circuit Court, and

*The decree dismissing the bill is affirmed.*