## GUARDIAN TRUST & DEPOSIT CO. v. GREENSBORO WATER SUPPLY CO.

(Circuit Court, W. D. North Carolina. March 24, 1902.)

No. 151.

**1. CORPORATION—PRIORITY OF LIEN AS BETWEEN MORTGAGE AND JUDGMENT—NORTH CAROLINA STATUTE.**

The statute of North Carolina (Code, §§ 697, 698) provides that, where all the property of a corporation shall be sold and conveyed under a mortgage, the corporation shall ipso facto be dissolved, and the purchaser shall be a new corporation, succeeding to all the franchises and charged with all the duties of the old, except the payment of its debts. The property of a water company was sold on foreclosure of a second mortgage, and, under an arrangement between all parties in interest, including the first mortgage bondholders, was bought by a new corporation, which assumed payment of the first mortgage, and also assumed performance of a contract between the old company and the city for the furnishing of water for a term of years. *Held* that, so far as the rights of the bondholders of the old company were concerned, the new company was but a continuation of the old, and that a judgment against the new company for a tortious injury to property arising from its negligent performance of the duties imposed on it by its contract with the city, which by statute was made superior to the lien of a mortgage upon its property, was equally as effective against such bondholders as though their mortgage had been executed by the new company.

**2. SAME—JUDGMENT IN TORT.**

A property owner whose property was injured by fire by reason of the negligence of a water company in failing to supply water for fire purposes, as it was obliged to do by a contract with the city, as well as by the duty imposed on it by law as a quasi public corporation which had received valuable franchises from the city, granted for the purpose of securing a water supply for fire protection as well as for private use, may sue such company either in contract or tort, at his election; and a judgment recovered in such an action, which expressly recites that it is "for the tortious injury and damage done him by the negligence of the defendant," is within the terms of Code N. C. § 1255, which gives judgments against corporations for torts committed by the corporation, its agents or employés, whereby property is injured, priority of lien over mortgages given by the corporation.

In Equity. On distribution of proceeds of mortgaged property, and introducing petitions by judgment creditors.

A. H. Taylor, for plaintiff.

John N. Staples and A. L. Brooks, for B. J. Fisher.

Bynum & Bynum, for Guarantee Trust & Safe Deposit Co.

Jas. T. Morehead, for city of Greensboro.

A. M. Scales, for Southern Stock Mut. Ins. Co.

John N. Wilson and L. M. Scott, for Helen G. Brown.

A. M. Scales, assignee of A. A. Hinkle and Hodgin, Pegram & Co.

Before SIMONTON, Circuit Judge, and BOYD, District Judge.

SIMONTON, Circuit Judge. This cause comes up on the pleadings, petitions for intervention, and a report of the master, merely stating testimony before him. The questions made in it arise under a bill for foreclosure of mortgage filed by the Guardian Trust & Deposit Company against the Greensboro Water Supply Company.

The complainant, as trustee, held certain bonds of the defendant company, secured by a mortgage of the property, plant, and franchises of the defendant company, subordinate in lien to a mortgage executed upon the same property, plant, and franchises by the Greensboro Water Company. A receiver having been appointed for the mortgaged property, a contract was entered into between the receiver and the city council of Greensboro looking to the purchase of all the mortgaged property at private sale for the sum of $75,000. Upon applying to the court for the approval and confirmation of this sale, it appeared that the Guardian Trust & Deposit Company of Philadelphia, trustee, holding the mortgage securing the $50,000 of bonds of the Greensboro Water Company, was a necessary party before such sale could be confirmed. An order was entered making this last-named trustee a party. On its appearance, and with its assent, the proposed sale was approved and confirmed; the money derived therefrom to stand in the place of the property in all respects, and to be held subject to the further order of the court. The questions in this case relate to the proper distributions of this fund, and the priority of claims thereon. The trustees of the two mortgages claim that the fund must be applied towards satisfaction of their mortgages according to their priorities. The interveners, who are judgment creditors of the Greensboro Water Supply Company, insist that under the statute law of North Carolina in force when the mortgages were executed, and which must be read as if incorporated in the mortgages, priority is given to judgments of the class to which their judgments belong, over any mortgage executed by the defendant corporation.

The facts of the case are these:

In 1887 a water company was organized in Greensboro, N. C., whose corporate purpose was to furnish that city and its inhabitants with water for domestic, sanitary, and fire purposes. On December 29th of that year the articles of agreement and letters of incorporation were filed with the clerk of the superior court of Guilford county, in which Greensboro was, and the name of the Greensboro Water Company was given to the corporation. These articles and letters were amended and ratified by the general assembly of North Carolina on March 3, 1891. Priv. Laws N. C. c. 166, pp. 1009, 1010. Very soon after its incorporation, in 1887, the Greensboro Water Company secured the passage of an ordinance by the city of Greensboro, under which it obtained franchises and rights to the exclusive use of the streets, sidewalks, and public grounds for the purpose of constructing, operating, and maintaining a complete system of waterworks. At the same time it obtained an agreement from the city to pay annually, for a term of years, money to the said company, in consideration for the supply by the said company of hydrants in various parts of the city, with an adequate water pressure at all times to extinguish fire, and to keep its tower, reservoir, etc., supplied with water day and night, so as to secure to the city and its inhabitants protection against fire. After this contract was made the Greensboro Water Company executed a deed of trust to the Guardian Trust & Deposit Company of Philadelphia to secure the payment of bonds aggregating $50,000, the deed covering all its property and plant. And on the 1st of May,

1891, the Greensboro Water Company executed a second deed of trust upon its plant to R. R. King and A. H. Taylor to secure a second bond issue of $20,000. In 1892 a bill was filed in this court by J. W. Middendorf et al., on behalf of holders of the bonds secured by the second mortgage, and also as representatives of holders of bonds under the first mortgage, against the Greensboro Water Company, seeking the appointment of a receiver, and praying a sale of the property. A receiver (James D. Glenn) was appointed, who managed the property. But in 1895, under a decree of this court, R. R. King and A. H. Taylor were appointed commissioners to sell the property, which sale took place on April 30, 1896. At this sale Hugh L. Pope became the purchaser, under an agreement had between all the bondholders and all parties interested, made before the day of sale; Pope acting as agent of all parties. Conveyance having been made to Pope, he at once conveyed all the plant and property purchased to a corporation then and there formed, named the Greensboro Water Supply Company. The conveyance to Mr. Pope and his conveyance to the new company were expressly declared to be subject to the mortgage held by the Guardian Trust & Deposit Company of Philadelphia for $50,000. Among the property conveyed in the deed of these commissioners, and also in the deed of Hugh L. Pope, was the contract for furnishing the city with water, as above stated, and, of course, the franchises under which the contract was made. This contract, among other things, had this provision:

"Said water company shall be responsible for all damages sustained by the city or any individual or individuals for any injury sustained from the negligence of said company either in the construction or operation of the plant."

This contract having been so purchased and conveyed to the Greensboro Water Supply Company, this company assumed the same, and thenceforward conducted its operations under its provisions; receiving the tolls from the city and from its inhabitants, and from this source principally paying the interest on the $50,000 first mortgage bonds.

On July 1, 1896, the Greensboro Water Supply Company executed a deed of trust of all its franchises and property to the Guardian Security & Deposit Company of Baltimore, Md., to secure the payment of bonds to the amount of $110,000, in two series; the first series, of 80 bonds, known as "Series A," and the other 30 as "Series B." Of series A, bonds to the amount of $50,000 were set apart to meet the $50,000 first mortgage bonds, as the conveyance was expressly stated to have been made subject to this lien. The original first mortgage bonds, however, have never been retired. The proceedings in the bill of this case were instituted to foreclose this mortgage, under which R. R. King was named as receiver. They bear date September 19, 1900. Anterior to the filing of this bill, in the month of June, 1897, two buildings in the city of Greensboro, with stocks of goods therein, were destroyed by fire. One of these buildings was owned by Charlotte Gorrell, and the stock of goods therein by A. A. Hinkle, who had, prior to the fire, made an assignment to A. M. Scales. The other building was owned by Helen G. Brown, and the goods therein by Hodgin, Pegram & Co., who, after the fire,

assigned all their interest to A. M. Scales. In the month of August, 1897, Helen G. Brown and A. M. Scales, assignee, instituted several suits because of these fires in the superior court of Guilford county against the Greensboro Water Supply Company. On the ——— day of June, 1899, another fire occurred in Greensboro, in which the property of B. J. Fisher, known as the "Benbow Hotel," was partially destroyed by fire. Fisher also instituted suit against the Greensboro Water Supply Company because of this fire. These causes were pending when the receiver was appointed for the Greensboro Water Supply Company. The answer having already been filed in the Fisher case, the receiver filed the answers in the Scales cases. At the ensuing January term of the superior court for Guilford county, the cases were heard. Upon the issues submitted to the jury in the several cases, they found for the plaintiff; that is to say, for Fisher, $25,000; for Scales, assignee of Hinkle, $3,200; for Scales, assignee of Hodgin, Pegram & Co., $1,800; and for Helen G. Brown, $3,000. Thereupon the plaintiff in each case submitted to the court an order for judgment, in which, after reciting the issues found by the jury, it proceeds:

"It is, therefore, on motion of counsel for plaintiff, ordered, adjudged and decreed that the plaintiff recover of the defendant ——— dollars damage *for the tortious injury and damage done him by the negligence of the defendant,*" and the costs of this action.

The court refused to sign this order because of the words underscored. An appeal was taken to the supreme court of North Carolina by the plaintiff, and, on hearing, the action of the lower court in refusing to sign the judgment was held error; that the action was brought, and properly brought, in tort. This decision was filed in the Fisher case. 128 N. C. 375, 38 S. E. 914. Thereupon the appeals were withdrawn in the other cases, the Fisher decision having been held to settle the question.

In the main case the master was instructed to call in creditors. The bondholders coming in proved their deeds of trust and their bonds. The parties holding these judgments proved them. The question is as to the priority of their judgments over the mortgage debt, under the statute law of North Carolina (section 1255 of the Code of 1883). This section is in these words:

"Mortgages of incorporated companies upon their property or earnings, whether in bonds or otherwise, hereafter issued, shall not have power to exempt the property or earnings of such incorporations from execution for the satisfaction of any judgment obtained in the courts of this state for labor performed [nor for materials furnished such incorporation], nor for torts committed by such incorporation, its agents or employés, whereby any person is killed or any person or property injured, any clause or clauses in such mortgage to the contrary notwithstanding."

This section has been amended so as to eliminate the sentence in brackets.

This section gives priority to judgments obtained against the corporation making a mortgage over the lien of the mortgage. In the case at bar there are two classes of mortgages. One class is a mortgage executed by the Greensboro Water Company. The other is a mortgage executed by the Greensboro Water Supply Company.

The judgments are against the Greensboro Water Supply Company. The judgment creditors claim that they are entitled to priority over the mortgage of the Greensboro Water Company, as well as over the mortgage of the Greensboro Water Supply Company. When the proceedings for the sale under foreclosure of the property of the Greensboro Water Company were instituted, they were conducted in an amicable way; and, when the sale took place, all parties (the stockholders, the corporation, and the creditors) constituted Mr. Pope their common agent. Under the arrangement made by them all, he purchased at the sale, and immediately thereafter conveyed to the Greensboro Water Supply Company. This company took subject to the first lien for $50,000, and bonds of the second lien were used in payment of the bid; the cash advanced by the first mortgage bondholders being returned to them in bonds of the new company. Under the operation of section 697 of the Code of North Carolina, when a sale has been made under a deed of trust or mortgage of all the property of a corporation, and a conveyance made pursuant to such sale, "upon such conveyance to the purchaser the said corporation shall ipso facto be dissolved and the purchaser shall forthwith be a new corporation by any name which may be set forth in the said conveyance, or in any writing signed by him and recorded in the same manner in which the conveyance shall be recorded." Section 698 declares that the corporation so created shall succeed to all the franchises, etc., and perform all such duties as would or should have been performed by the first corporation, save only that it shall not be entitled to the debts due to the old corporation, and be liable for none of its debts or claims which may not have been expressly assumed in the contract of purchase. So when the sale in question, and the conveyance pursuant thereto, took place, the Greensboro Water Company ipso facto was dissolved. The new company assumed all its duties, and in the contract of sale assumed the $50,000 mortgage. All this pursuant to an agreement in which the first mortgage creditors took part. The new corporation was but a continuation of the first. The first mortgage became its mortgage, and must be treated as such. There is another point of view: When the foreclosure of the mortgage of the Greensboro Water Company was had, it was under contract with the city of Greensboro to furnish water for a term of years. This contract was assumed by the new company, with the assent of the old company, and was in course of performance; no new contract having been made. So the Greensboro Water Supply Company was really acting for and in behalf of the old company, and the latter was liable also. James v. Railroad Co. (N. C.) 28 S. E. 538, 46 L. R. A. 306.

This brings us to the question in the case: Have those judgments a lien prior to the lien of the mortgages? Are these judgments "for torts committed by the corporation, its agents or employés," whereby property was injured? The interveners produce the judgments in each case, which distinctly state that damages are given "for the tortious injury and damage done by the negligence of the defendant." The supreme court of North Carolina in this case held that, under the facts of the case, the plaintiff was entitled to declare in tort; that

"although action may have been maintained upon a promise implied by law, yet an action founded on tort was the more proper form of action, and the plaintiff so declared." Fisher v. Supply Co. (N. C.) 38 S. E. 914. This judgment is entitled to full faith and credit. As between the corporation and the plaintiff, it would be conclusive. It is presented in a cause in which mortgagees are parties; and the question is not whether the judgment be valid, but whether it is a judgment of such a character as it will be given priority to the claim of the mortgagees, who were not parties to the suit in which it was obtained. "When such a judgment is presented to the court for affirmative action, while it cannot go behind the judgment for the purpose of examining into the validity of the claim, it is not precluded from ascertaining whether the claim is really one of such a nature that the court is authorized to enforce it." Wisconsin v. Pelican Ins. Co., 127 U. S. 263, 8 Sup. Ct. 1370, 32 L. Ed. 239. In Hassall v. Wilcox, 130 U. S. 503, 9 Sup. Ct. 590, 32 L. Ed. 1001, in a proceeding marshaling claims against an insolvent estate, it was held that the trustees of a mortgage had a right to contest the priority of lien of a judgment rendered in a state court, and compel the intervener to prove affirmatively the existence and priority of his lien. The supreme court of North Carolina, in Fisher v. Supply Co., supra, pressed for a decision upon this point whether that was such a judgment as was protected under section 1255 of the Code, declined to answer the question. This section of the Code gives priority to the judgments for torts committed by such incorporation, its agents or employés, whereby any person is killed, or any person or property injured. In the case at bar property was injured because of the alleged negligence of the Greensboro Water Supply Company. Would an action for tort lie? The Greensboro Water Supply Company had assumed the obligation of supplying the city and its inhabitants with water for domestic and public purposes, and also for the purpose of extinguishing fires. The supreme court of North Carolina had held in the case of Gorrell v. Supply Co., 124 N. C. 328, 32 S. E. 720, 46 L. R. A. 513, 70 Am. St. Rep. 598, that an action would lie against the corporation as well on the part of the city council as on that of any citizen of the city. The judgments before us establish the fact that such a supply of water for the purposes of fire was not furnished. They also establish the fact that the failure to do so was because of the negligence of the defendants. Is such negligence the foundation of an action in tort? The grand division of causes of action into such as arise ex contractu and such as arise ex delicto—contract or tort—underlies the system of the common law. Under the old practice the forms of action must conform to this division. A contract, as a contract, could not be enforced in an action in form ex delicto. Nor could a tort be relieved in an action in form ex contractu. And although the Code has abolished all distinction between forms of action, still the distinction between causes of action remains. In Code pleading, the action proceeds upon the statement of facts of the case, and on these facts the court draws the conclusion whether the cause of action is founded on the contract or on a tort. Young v. Telegraph Co., 107 N. C. 384,

o

11 S. E. 1044, 9 L. R. A. 669, 22 Am. St. Rep. 883. The Greensboro Water Supply Company, as has been seen, was under the obligation of a' contract to furnish a full supply of water to the city and its inhabitants for sundry purposes, including that of fire. And under this obligation it was its duty to do so whenever needed. Besides this,—indeed, to facilitate the performance of this obligation and in consideration of this obligation,—it was clothed with valuable franchises, under which it used the streets of the city in laying its mains. Under its obligations, it was to furnish the city and its citizens with one of the necessaries of life, and was bound to furnish all that desired it, who paid the price imposed. It served the public, and to this extent was a quasi public corporation, bound to the discharge of a public duty. Griffin v. Water Co., 122 N. C. 206, 30 S. E. 319, 41 L. R. A. 240; Coy v. Gas Co. (Ind. Sup.) 36 L. R. A. 535 (s. c. 46 N. E. 17). So it was the duty of the water company to furnish the water for fire,—a duty arising out of an express contract, and out of the franchises granted to it for the purposes of public utility and need. It did not fulfill this duty. Chitty, in discussing actions on the case (a form of action ex delicto), and of the injuries for which relief could be had under this form of action, says:

"These injuries may be either by nonfeasance, or the omission of an act which the defendant ought to perform; or by misfeasance, being the improper performance of an act which might lawfully be done; or by malfeasance, the doing what the defendant ought not to do; and these respective torts are commonly the performance or omission of some act contrary to the general obligations of the law, or the particular rights and duties of the parties, or of some express or implied contract between them." Chit. Pl. (11th Am. Ed.) 133.

And in the same volume, in stating the requirements of the declaration, in actions for torts, Mr. Chitty says:

"When the plaintiff's right consists in an obligation on the defendant to observe some particular duty, the declaration must state the nature of that duty, which, we have seen, may be founded either on a contract between the parties, or on the obligation of law arising out of the defendant's participation, character, or situation." 1 Chit. Pl. 383.

Jaggard, in his work on Torts, says:

"While normally a breach of a contract gives rise to a cause of action ex contractu, a contract may impose a duty on the part of the defendant as party to it, for the violation of which the plaintiff may recover ex contractu or ex delicto, at his option." 2 Jag. Torts, 897.

And Add. Torts, § 28, holds the same doctrine.

In the case of Fisher v. Supply Co. (one of the judgments proved here) the supreme court of North Carolina held that the complaint stated facts justifying the entry of the judgment "for tortious injury and damage done him by the negligence of the defendant"; that, from the statements of the complaint, "an action founded on tort was the more proper form of action." Fisher v. Supply Co., 128 N. C. 375, 38 S. E. 914. As between the corporation and these judgment creditors, this decision is conclusive. It did not bind the mortgage creditors; nor could the judgments have been enforced against the property of the corporation, as that was in the hands of this court. We have, therefore, examined the record of the case

of Fisher against the water company, and, aided by the arguments of counsel, have inquired into the correctness of the decision therein rendered. The only question is, will an action, as for a tort, lie against a defendant who has negligently performed an express contract? We have seen that, in entering into this contract, the water company assumed a duty to the public. Mr. Chitty, quoted, supra, says that, under circumstances like these, the plaintiff may proceed either ex contractu or ex delicto. In other words, the negligence in not performing a contract of this character, whereby property has been injured, is a tort, as well as a breach of contract, and that on such a tort action will lie. The judgments in question then are judgments in tort, and are protected by section 1255.

Let a decree be entered giving priority to the lien of these judgments over the lien of the mortgages.