## MANUFACTURING COMPANY *v.* LADD.

1. Where a bill was filed charging an infringement of reissued letters-patent No. 5154, dated Nov. 19, 1872, which was denied by the answer, the court, in view of the state of the art at the date of the invention for which the original letters were granted to Asa M. Swain, May 11, 1860, for improvements in water-wheels, construed the claims of the reissued letters in accordance with the distinct limitation of that invention in the original letters to a wheel of specific construction and form with its associated apparatus, and finding that there was no infringement of the claims thus construed dismissed the bill. *Held*, that such a construction gave the complainant no just ground of exception.

2. The evidence examined, and the result of a comparison of the reissued letters with the original letters, including the drawings and model submitted with the application for them, stated.

3. A reissue can only be granted for the same invention which was originally patented.

APPEAL from the Circuit Court of the United States for the District of Massachusetts.

The facts are stated in the opinion of the court.

*Mr. John S. Abbott* and *Mr. Henry W. Boardman* for the appellant.

*Mr. Charles E. Mitchell* for the appellee.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The Swain Turbine and Manufacturing Company filed a bill against James E. Ladd, alleging that the latter had infringed certain letters-patent owned by the company, which had been granted to Asa M. Swain on the 15th of May, 1860, for a new and improved water-wheel, and which had been surrendered and reissued on the 19th of November, 1872, numbered 5154. The bill sought an account of profits, damages for the infringement, and a perpetual injunction against further use of the alleged invention. The defendant filed an answer denying infringement, and assailing the patent of the complainant on various grounds, such as prior discovery and invention by other persons, illegality of the new issue, &c. Proofs having been taken and the cause heard, the Circuit Court dismissed the bill, on the ground that, according to the true construction of the patent sued on, the defendant did not infringe. The company thereupon appealed.

It was conceded that if the reissued patent should be construed literally, without restraining the generality of its claims by a reference to the original patent, the wheels made by the defendant would be an infringement; but the court, in view of the state of the art at the date of Swain's invention, and of the distinct limitation of that invention in the original patent to a wheel of specific construction and form, considered itself bound to construe the claims of the reissued patent in accordance with such limitation, in order to avoid the conclusion that it was for another and different invention from that originally patented. From a careful examination of the evidence in the case we are satisfied that this was the most favorable view that could have been taken for the complainant. A comparison of the original letters-patent, including the drawings and model, with the reissued patent, makes it very evi-

dent that the latter is the result of an effort to enlarge the
scope of the patent so as to include and embrace within it mat-
ters and things that were not embraced in the original inven-
tion.    The original specification, drawings, and model all agree
in describing a specific wheel and associated apparatus as the
subject of the invention secured by the letters-patent.    They
distinctly describe a wheel with its floats, each made of a single
piece of metal, having their face sides, where the water strikes,
of a paraboloidal form, with their bottoms formed by revolving
the curves on their axes, and arranged in a particular direction
to receive the water from the guides; and having the rim of
the wheel covering the floats so curved as to force the water
down rapidly in the lower curved parts or bottoms of the floats;
the water being turned down between the curb and wheel and
lower curb: they describe an annular chamber situated above
and outside of the wheel, with slots in its bottom to receive
and steady the guides when raised with the gate, and which is
filled with water, forming a sort of stuffing-box: they describe
a cylindrical gate, below the annular chamber surrounding the
curb below the wheel, provided at the top with a flange to
which the guides are attached, and which is opened by being
lowered to let the water into the wheel through the guides, and
is shut by being raised up to the bottom of the annular cham-
ber: lastly, they describe a particular contrivance for adjusting
the wheel on its step, which is of no consequence in the dis-
posal of the present case.    Substantially, this is the entire de-
scription: the wheel, formed and made as stated; the annular
chamber; the cylindrical gate, with the guides attached to its
flange; and the contrivance for adjusting the wheel on the step.
There is also a description of the enclosing case and curbs, and
the machinery for raising and lowering the gate and the wheel;
but these parts have nothing to do with the controversy.

The claim of the patent was threefold: first, for the annular
chamber, with slots in the bottom to receive the guides; sec-
ondly, the combined arrangement of the guides, the cylindrical
gate, and the annular chamber, as unitedly related to the
wheel; thirdly, the step arrangement.    Here we have a clear
and distinct specification of an invention, and of the particu-
lar machinery which is its subject-matter.    The wheel is not

claimed, either as to its form or fashion, or mode of operation; nothing is claimed but the annular chamber, the peculiar gate and guide arrangement, and the step adjustment, — none of which things are in controversy in this suit.

But a change comes over the scene: the patent becomes the property of a corporation that manufactures wheels; a monopoly of the business is very desirable; other manufacturers make turbine wheels approaching somewhat in appearance to that described in Swain's patent. The usual remedy in such cases is resorted to. A reissue of the patent is sought, with expanded claims, sufficiently general and comprehensive to embrace a wide monopoly of structure, and to shut up competing establishments. In this way the patent laws have been made the instruments of great injustice and oppression. The real object and design of a reissue of a patent have been abused and subverted. The intent of the law was to allow a correction to be made " whenever a patent is inoperative, or invalid, by reason of a defective or insufficient description or specification, or by reason of the patentee's claiming in his specification as his own invention more than he has a right to claim as new; and when the error has arisen by inadvertency, accident, or mistake, and without any fraudulent or deceptive intention." These are the words of the law granting the right. It was never intended to allow a patent to be enlarged; but to allow the correction of mistakes inadvertently committed, and the restriction of claims which had been improperly made, or which had been made too broad, — just the contrary of that which has come to be the practice. In a clear case of mistake — not error in judgment — the patent may undoubtedly be enlarged; but that should be the exception, not the rule; whereas the enlargement of claims has become the rule, and their contraction the exception.

These remarks are well illustrated in the case before us. We have shown what was the original invention described and claimed. After the lapse of twelve years and a half the patentee (or rather his corporation assignee) discovers that through inadvertence and mistake his specification is wrong, and needs correction; and a reissue is obtained, with eleven different claims. These claims are quite different from those

of the original patent, and are intended to give to the present proprietors a large and valuable monopoly. Here are some of the claims: —

1. A water-wheel, the floats of which have a discharge-line extending from the crown at their inner edge to the lower outer edge of the wheel.

2. The combination in a water-wheel of a crown, band, and floats, having their discharge-line extending from the crown at their inner edge to their lower outer edge.

3. The combination in a water-wheel of a crown and floats, having their discharge-line extending from the crown at their inner edge to the lower outer edge.

5. A water-wheel having an effective inward flow and discharge of part of the water, and an effective downward flow and discharge of part of the water simultaneously in one wheel, whereby the effective area of discharge is increased without increasing the diameter of the wheel.

Here is a sweeping generalization, which, taken literally, would give to the patentee a monopoly of all water-wheels having simultaneously an effective inward and downward flow and discharge, whatever might be the shape of the floats, or of the crown. This was certainly not the invention described or suggested in the original patent. The invention of a wheel was not claimed at all : a wheel was described ; but it was a wheel made after a particular pattern or form, and adjusted to a particular apparatus for the reception and discharge of the water. Its buckets were described as paraboloidal; its rim over the buckets curved downward and inward so as to force the water down rapidly in the lower curved parts or bottoms of the floats. No intimation is given that a wheel of a different form would answer the purposes of the invention. The defendant does not copy either of these features in his wheels. Their floats are not paraboloidal, but waving ; the rim is not curved downward and inward, but is horizontal. It is very apparent why the claim has been generalized as it has been. The patentee desires to secure the monopoly of every centre-vent wheel, of whatever shape or form, which discharges the water both inwardly in the centre of the wheel and downwardly from the bottoms of the floats beneath the wheel. But that would be a

new invention, very different from what was described and claimed in the original patent.   To warrant this extension of the claim, the specification of the reissued patent contains material variations from that of the original, frequently stating that a particular part *may* be constructed thus and so, when the original *required* it to be thus and so ; it speaks of " the upper horizontal edge of the floats," when no such thing is, mentioned in the original, but on the contrary the rim over the floats was described as curving inward and downward, and as being so curved for a special purpose and effect. . Instead of correcting inadvertent mistakes in the specification, which rendered the patent inoperative and void, the pretended corrections are evidently intended to widen the scope of the patent, and to make it embrace more than it did at first.   So far as description went, the original specification was as perfect as the new one.

The mistake of the patentee (or his assigns) seems to have been in supposing that he was entitled to have inserted in a reissued patent all that he might have applied for and had inserted in his original patent.   The appellant produced on the argument exhibits tending to show that the patentee before obtaining his original patent had made and done all those things which are embraced in or covered by the reissued patent.   If this were true, it would be nothing to the purpose. A reissue can only be granted for the same invention which was originally patented.   If it were otherwise, a door would be opened to the admission of the greatest frauds.   Claims and pretensions shown to be unfounded at the time might, after the lapse of a few years, a change of officers in the Patent Office, the death of witnesses, and the dispersion of documents, be set up anew, and a reversal of the first decision obtained without an appeal, and without any knowledge of the previous investigations on the subject.   New light breaking in upon the patentee as the progress of improvement goes on, and as other inventors enter the field, and his monopoly becomes less and less necessary to the public, might easily generate in his mind an idea that his invention was really more broad and comprehensive than had been set forth in the specification of his patent.   It is easy to see how such new light would naturally

be reflected, in a reissue of the patent, and how unjust it might be to third parties who had kept pace with the march of improvement. Hence there is no safe or just rule but that which confines a reissued patent to the same invention which was described or indicated in the original.

Since, therefore, any extension of the reissued patent beyond the scope of the invention set forth and fairly indicated in the original specification, drawings, and model, would be fatal to the patent itself, we think that the appellant ought to be satisfied with the course taken by the circuit judge in so construing the patent with reference to those original tests as to restrain and confine the intent and meaning of the claims within legitimate and admissible bounds. And so construed, there is no plausible pretence that the defendant is guilty of an infringement.

If the appellant insists on the broad construction of the claims in the new patent, it must take the risk of being met with previous achievements in the same line of improvement, which may very seriously endanger the validity of its patent. Several structures have been produced on the hearing, antedating the invention of Swain, and it would be very difficult to maintain that they do not embrace the principal feature in Swain's wheel, sought to be appropriated by him.

If the evidence with regard to Stowe's wheels, constructed in 1837, 1841, and 1850, is to be relied on, it is not a sufficient answer to say that they were merely spout-wheels, and were never used under water as turbines. They are substantially the same wheel as Swain's, and whether used as turbines, or only under the operation of a spout, they anticipate his structure. The mere change of use by placing them in a different position with regard to the water is not patentable.

The Temple wheel, the Whitney wheel, and the Greenleaf wheel all conduct the water in the same lines that Swain's does from its entrance into the wheel to its final departure from it; and if, on an investigation of dates, we should find that either of these wheels antedated Swain's invention, we should probably be forced to the conclusion that they each contained the fundamental element of a simultaneous inward and downward flow and discharge of water through the wheel,

which the appellant claims as the principle of Swain's invention.

We do not deem it necessary to go into a more particular examination of the evidence at this time. We have examined it carefully, and have come to the conclusion that the view taken of the case by the Circuit Court was as favorable to the appellant as it could reasonably ask.

*Decree affirmed.*