## PEORIA TARGET CO. v. CLEVELAND TARGET CO. et al.

### (*Circuit Court, N. D. Ohio, E. D.* September 24, 1891.)

1. **PATENTS FOR INVENTIONS—REISSUES—ACQUIESCENCE AND ESTOPPEL—DISSOLUTION OF INTERFERENCE.**

    The specifications of letters patent No. 295,302, issued March 18, 1884, to Charles F. Stock for an improvement in traps for throwing targets to be shot at by marksmen, state that "the invention consists in the employment of a novel device at the outer end of the thowing arm for holding the target during the swing of the arm, and to release it at the proper time for causing it to be properly projected into the air." Claim 1 is for "the combination with the throwing arm * * * of a clip for holding the target, arranged to automatically drop below the upper surface of the throwing arm for releasing the target, substantially as described." October 13, 1884, said Stock applied for another patent, claiming—*First*, "a clamping device pivotally secured to the end of the sending arm, provided with a mechanism to automatically release the target;" and, *second*, a combination of this clamping and releasing device with "means for imparting to said target a positive axial rotation as it leaves the trap." This application was accompanied by Stock's affidavit that he was the original inventor of the improvement sought to be patented, and "that the same had not been patented to him or to others with his knowledge or consent, * * * and that he does not know and does not believe that the same was ever known or used prior to his invention thereof." These claims and various modifications thereof were rejected on the ground that they were anticipated by letters patent No. 301,903, issued to P. Marqua July 15, 1884. Stock having died, his administrator acquiesced in this rejection. Afterwards the administrator applied for a reissue of the original patent to Stock on the ground that the real invention was not secured therein, and in claims 3 and 4 made substantially the same claims as those which had been rejected in Stock's application of October 13, 1884. An interference was disclosed between these claims and the Marqua patent, but was subsequently dissolved on the administrator's motion, and reissued patent 10,867 was granted substantially as applied for. *Held,* that in the absence of sufficient proof of accident, inadvertence, or mistake in omitting these claims from the original patent, and in view of Stock's affidavit, and his administrator's acquiescence in the rejection of the same claims in the application of October 13, 1884, the administrator was estopped from setting up the same claims in the reissue, and hence claims 3 and 4 of the reissued patent were void.

2. **SAME—INADVERTENCE AND MISTAKE—REISSUE.**

    The action of the patent-office in granting the reissue was not conclusive that there was actual accident, inadvertence, or mistake in omitting the claims for the pivotal device and the improvement in axial rotation from the application for the original patent, and the court is free to investigate that question.

3. **SAME—ANTICIPATION.**

    The claim for the "pivotal device" was anticipated by the invention of A. H. Hebbard, who conceived and reduced to practice a "pivoted" target-holding device prior to December 8, 1882.

4. **SAME—PRIOR STATE OF ART—INFRINGEMENT.**

    Claim 1 of the reissue was for a combination with the throwing arm of a target-throwing device of "a clip for holding the target, arranged to automatically drop

below the surface of the throwing arm for releasing the target, substantially as described" in the specifications. By the specifications it appears that the means of releasing the target consists of a slot at the end of the throwing arm, into which the clip is designed to fall, in order to "drop below" the surface thereof. *Held* that, in view of the prior state of the art, Stock was not a pioneer inventor, whose claim should be broadened by construction, and hence the slot was an essential element of his claim, and the same was not infringed by defendants' patent, which accomplished the same result by other means.

In Equity. Suit for infringement of patent. On rehearing. For former report, see 43 Fed. Rep. 922.

*Poole & Brown* and *Lysander Hill,* for complainant.

*Webster & Angell, J. K. Hallock,* and *H. S. Sherman,* for respondents.

JACKSON, J. This suit was brought in January, 1888, for infringement of reissued letters patent No. 10,867 granted September 13, 1887, to N. Grier Moore, administrator of the estate of Charles F. Stock, deceased, for an improvement in traps for throwing targets to be shot at by marksmen. The original patent, numbered 295,302, was dated March 18, 1884; the application therefor having been filed December 28, 1883. The application for the reissue was filed on March 27, 1885. The bill, after setting out the original patent to said Stock; the assignments thereof, under and by virtue of which the complainant acquired the title to said reissued letters patent; the death of Stock, and the appointment and qualification of Moore as the administrator of his estate, etc.,—alleged that said original letters patent were found to be inoperative or invalid by reason of an insufficient or defective specification, which insufficiency or defect had arisen through inadvertency, accident, or mistake, without any fraudulent or deceptive intention on the part of said Stock; that said letters were surrendered by said administrator, with the assent of the assignee, to the commissioner of patents, and application was made for a new patent to be issued for the same invention; that said application was accompanied with a corrected description and specification; that the same was thereafter duly allowed, and the reissue granted September 13, 1887. The poor health of Stock from December 1883, to his death, on October 28, 1884, and the difficulty in getting an administrator appointed, are alleged as excuses for the delay in applying for said reissue. The bill then alleges infringement of said reissued letters patent by defendants, and prays for injunction and the usual relief. The defendants set up in their answer several defenses,—noninfringement, invalidity of the reissued letters patent, want of novelty, and priority of invention,—setting up various patents as anticipating the Stock patent. They specially denied that the original patent was inoperative or invalid by reason of any insufficient or defective specification, or that such insufficiency or defect arose through any accident, inadvertence, or mistake on the part of said Stock. The case was heard upon the pleadings, exhibits, and proofs, November 23, 1889; and on May 29, 1890, an opinion was handed down by Judge RICKS (reported in volume 43, Fed. Rep. 922,) sustaining the validity of the reissued letters patent, and finding that defendants' trap infringed the first, third,

and fourth claims thereof. Upon application of defendants, supported by affidavits, a rehearing was granted by Judges Brown and Ricks, and leave was granted to file a supplemental answer, which was done November 26, 1890. This supplemental answer sets up that said Stock was not the original, true, and first inventor of the improvements shown in said reissued letters patent; that a target holding and releasing device embodying the improvements described in said letters patent was invented by A. H. Hebbard in 1882, and that the same was exhibited and used in public by him in said year; that the application for the original patent No. 295,302, dated March 18, 1884, was prepared by H. A. West, in the city of New York, in December, 1883, in exact accordance with the instructions of said Stock; that said Stock was then fully capable of explaining and did explain to said West his said invention, which he stated consisted in a device for holding and releasing targets which the first claim of the original letters patent accurately described; that said Stock carefully read over and understood the application made for said letters patent; that about a month thereafter said Stock was in the city of New York, when said West prepared for him applications for letters patent for two other inventions, on which patents were granted to said Stock April 22, 1884, and May 27, 1884, respectively; that said West was a witness to the signature of said Stock upon the application for said original letters patent No. 295,302, etc. Issue was joined on this new pleading, December 20, 1890; and the cause is now before the court upon the whole case made by the original and amended pleadings, exhibits, and proofs had and taken both before and since the rehearing was granted.

It is not deemed necessary to review the evidence, or notice in detail all the questions that have been raised and discussed. In the specification forming part of the original letters patent No. 295,302, dated March 18, 1884, it is stated that "the invention consists in the employment of a novel device at the outer end of the throwing arm for holding the target during the swing of the arm, and to release it at the proper time for causing it to be properly projected into the air." This device for holding and releasing the target is then described by reference to the drawings accompanying and forming part of the specification; and what the patentee claimed as new, and desired to secure by letters patent, was:

"(1) The combination with the throwing arm of a target-throwing device of a clip for holding the target, arranged to automatically drop below the upper surface of the throwing arm for releasing the target, substantially as described; (2) the target-holding clip, consisting of the pivoted plate, $p$, having the plate, $o$, provided with a toe, $o'$, hinged to it, in combination with the slotted plate, $q$, all adapted to be operated substantially as described."

It is perfectly clear from these claims, as well as from the specification descriptive of Figs. 1, 2, and 6, of the drawings, that a downward movement of the target-holding device was provided for in order to effect the release of the target, and that such downward movement was to be accomplished by means of a slot at the end of the arm, into which the tongue of the plate or holding clip should drop, and thereby release the

target. It is urged on behalf of complainant, and its expert, Melville E. Dayton, gives it as his opinion, that the slot into which the clip for holding the target is arranged to drop automatically, so as to bring said clip "below the upper surface of the throwing arm," and thereby release the target, is not an element of the combination described in said first claim. It is shown by the evidence that the patentee, Stock, was a mechanic and machinist; that he was a reading man, of intelligence, who was well posted, and kept himself informed in the matter and art of target traps and targets; and that both before and after said original letters patent were issued he had made inventions and secured patents in that line. In order to sustain or establish the allegations of its bill, that said original letters patent No. 295,302, as granted, did not, through inadvertence, accident, or mistake, set forth the invention which Stock intended and desired to have patented, complainant took evidence in chief as to the state of his health in December, 1883, and in 1884, for the purpose of showing that he was not in a condition to understand what he was doing when he made his application for said patent. The proof utterly fails to establish any such lack of understanding. Several witnesses on behalf of complainant testify that when said letters patent were received by him, in 1884, Stock expressed dissatisfaction as to the same; but the evidence is generally of the vaguest and most unsatisfactory character in respect to his complaints against it. The only witness who undertakes to give any specific matter of dissatisfaction on Stock's part is Frank Jack, who, on direct examination, in reply to the question, "In what way was the patent not what he wanted? I mean, did he (Stock) say in your presence wherein the patent was defective,— whether in the drawings or the descriptive matter or the claims?"—states: "He said the claims were not as he wanted them; that there were other ways of releasing the target, which others could use, and which Munn & Co. [his attorneys] should have prevented." In July, 1884, Stock consulted a patent attorney of Chicago upon the subject of said patent and a reissue thereof, but reached no conclusion, and took no action or steps in the matter. That attorney has been called as a witness for complainant, but he fails to state in what respect Stock was dissatisfied with his patent, or what he desired to be incorporated in a reissue thereof, if applied for. When this conversation or consultation was had, said attorney was then employed by said Stock to obtain letters patent on two inventions,—one upon a target, and the other upon an improvement in traps for throwing targets. Application for the latter was duly prepared and filed October 13, 1884, on which letters patent No. 323,020, dated July 14, 1885, were granted to Stock's administrator, who had previously assigned the same to complainant. The file wrapper and contents in the matter of that patent are put in evidence by defendants. It appears therefrom that said Stock, after reciting in his specification the imperfections and defects in the traps previously patented and then in use, consisting of an uncertain amount of axial rotation or an insufficient axial rotation of the targets to cause an even and steady flight, resulting in a "wobbling" motion; the inability to throw the targets to any con-

siderable distance, and the uncertainty as to length of throw,—described his invention as follows:

"My improvement consists in providing the end of the sending or throwing arm with a pivoted clamping and automatically releasing device, so constructed that the target is securely held in place while the sending arm is being swung around, and arranged in such manner as to automatically release the target when in proper position for being thrown, and at the same time, by means of a pin or other stop, to give the target more axial rotation than it otherwise would receive by reason of centrifugal force alone."

The claims which he made thereon, so far as material to the present case, were the following:

"(1) In a trap for sending or throwing targets, a clamping device pivotally secured to the end of the sending arm, provided with mechanism to automatically release the target, substantially as specified. (2) In a trap for sending or throwing targets, a clamping device pivotally secured to the end of the throwing arm, provided with mechanism to automatically release the target, and also with means for imparting to said target a positive axial rotation as it leaves the trap, substantially as specified."

These two claims were rejected by the patent-office October 28, 1884, on the ground that they were substantially anticipated by the patent of P. Marqua, No. 301,908, dated July 15, 1884. Stock died on the same day of said rejection, October 28, 1884. In the further prosecution of the application by his administrator, various amendments and modifications of the claims were made, followed by repeated rejections based on said Marqua's patents, No. 301,908, dated July 15, 1884, and No. 313,-220, dated March 3, 1885, until finally, on May 5th, the attorney representing the applicants, in apparent desperation or despair, requested the commissioner or examiner in the patent-office to "kindly indicate (in pencil) the form of claim" which would be allowed. On May 8, 1885, the examiner complied with said request, and sent a penciled memorandum illustrating what he deemed the patentable subject-matter in the case. This was adopted, and the patent allowed thereon. The application filed October 13, 1884, for said letters patent, and containing said claims 1 and 2, which were rejected, was accompanied by the usual affidavit, in which Stock swore that he believed himself the original, first, and sole inventor of the improvement in traps set forth and claimed in the specification, and "that the same has not been patented to him or to others, with his knowledge or consent, in any country, * * * and that he does not know and does not believe that the same was ever known or used prior to his invention thereof." While the proceedings on this application of October 13, 1884, were pending, and after repeated rejections of claims 1 and 2 as originally presented, and amendments thereof, Moore, the administrator of Stock, on behalf of complainant, on March 27, 1885, filed an application in the patent-office for a reissue of the original letters patent No. 295,302, granted to Stock March 18, 1884, on the ground that Stock's real invention, or what he intended to have patented, was not secured therein, through accident, inadvertence, and mistake. On June 24, 1885, an interference was declared between said application and the applications of Kirk-

wood, Springer, and Teiple, and the aforesaid patent of Philip Marqua, No. 301,908, on reference to which the claims 1 and 2, and modifications thereof, of the Stock application, filed October 13, 1884, had been rejected as aforesaid. On January 23, 1886, said interference was dissolved as to the Marqua patent on the motion of said Moore theretofore made. After decision by the examiner finding priority of invention in favor of Moore on the Stock patent of March 18, 1884, as against the remaining interferences, the application for reissue was allowed, and the reissued patent, No. 10,867, was granted, containing claims 1 and 2 of the original patent, and two new or additional claims, as follows:

"(3) In a trap or sending apparatus for flying targets, a throwing arm provided with a pivoted extension or target carrier, which by the motion and arrest of the arm is independently rotated on its pivot by centrifugal force into a position elongating said arm to project the target, substantially as specified. (4) In a trap or sending apparatus for flying targets, a sending or throwing arm having a pivoted clip carrying the target, said arm being provided with means for automatically releasing the target at the extreme extension of the arm, as and for the purpose specified."

The claims 1 and 2 of the Marqua patent of July 15, 1884, on which claims 1 and 2 of the Stock application of October 13, 1884, were rejected, are as follows:

"(1) In a trap or sending apparatus for flying targets, a sending arm provided with a pivoted extension constituting the target carrier, which by the motion and arrest of the sending arm is independently rotated upon its pivot by centrifugal force into a position elongating the main arm, and projects the target by a sudden rotary impulse, substantially as set forth. (2) In a trap or sending apparatus for flying targets, a sending arm provided with a pivoted extension carrying the target, and having an independent rotation by centrifugal force, in combination with target holding and releasing mechanism automatically actuated to release the target at the moment of extreme extension of the sending arm, substantially as set forth."

It admits of no question that claims 3 and 4 of the reissued patent are substantially the same as claims 1 and 2 of Stock's October, 1884, application, and which were rejected because anticipated by the claims of the Marqua patent of July 15, 1884. It is furthermore perfectly clear, as may be seen by simple comparison of the two, that said claims 3 and 4 of the reissued patent No. 10,867, are not merely substantially, but literally, the same as claims 1 and 2 of said Marqua patent. It is apparent from the whole record that the manifest purpose and object of applying for and securing said reissue was to overreach said Marqua patent, which had defeated Stock's October, 1884, application for the same invention. It is suggested by counsel for complainant that it was a mistake or inadvertence on the part of Stock and his attorney to have made said October, 1884, application and claims. But there is no evidence whatever to support that suggestion; and, in the absence of clear and positive proof to the contrary, it must be assumed that Stock knew what he wished to secure letters patent on, and also knew whether the invention then claimed had been previously patented or intended to be patented by himself. It is said that, claims 1 and 2 of that application

having been "abandoned," Stock's administrator and assignee had the right to procure a reissue of the original letters patent of March 18, 1884, and thereby secure substantially the same claims, by applying therefor within two years, and satisfying the patent-office that, through inadvertence, accident, and mistake, said original letters patent failed to secure to him the invention which he sought to have patented. There was no voluntary abandonment of said claims, but a rejection thereof on the ground that they were anticipated by said Marqua patent. In this rejection, Stock's administrator and complainant acquiesced. It is well settled by the authorities that if Stock, or his administrator or assignee, after such rejection and acquiescence, and after the issuance of the letters patent No. 322,020 dated July 14, 1885, had applied for and obtained a reissue thereof, embracing claims the same, or substantially the same, as the new claims 3 and 4 of reissued letters patent No. 10,-867, such reissue would have been void, especially as against the Marqua patent, No. 301,908. *Leggett v. Avery*, 101 U. S. 256–260, and *Yale Lock Manuf'g Co.* v. *Berkshire Nat. Bank*, 135 U. S. 379, 10 Sup. Ct. Rep. 884. Why should not the same rule be applied in this case, where the same parties in interest seek to accomplish the same result through the instrumentality of a previous patent by means of reissue proceedings, in which said Marqua patent was, upon their motion, dropped out of interference in order to insure the allowance of their application? If it be conceded that Stock was the inventor of the "pivoted" feature of the target carrier or holding clip; that said pivoted device was shown in the drawings and specification of the original patent, issued to him March 18, 1884; and that said "pivoted" extension of the main throwing arm could have been inserted in the claims of said patent either separately or in combination with the holding and releasing devices,—still Stock was not bound to include or cover it by or in the claims of said patent. He had the right to make it the subject of a new and distinct patent by a separate application therefor within the period of two years. *Corn-Planter Patent*, 23 Wall. 224; *Rowell* v. *Lindsay*, 113 U. S. 101, 5 Sup. Ct. Rep. 507; *Parker & Whipple Co.* v. *Yale Clock Co.*, 123 U. S. 101, 8 Sup. Ct. Rep. 38; *James* v. *Campbell*, 104 U. S. 378. Now when Stock elected, in October, 1884, to make this "pivoted" extension or carrier the subject of a new application, and sought thereon either a distinct patent, or to incorporate it as a new element in combination, and his claims were rejected on reference to the Marqua patent, it would seem upon principle that he or his administrator and assignee should be estopped or precluded from resorting to a reissue of the original patent to secure the same claims, for the manifest purpose of overreaching the anticipating patent, which had defeated the separate independent application. It is shown by the evidence that the Marqua device embracing the pivoted feature of the carrier or target holding clip was invented about the 10th or middle of July, 1883; that the patent thereon was granted in July, 1884; that a large and valuable business was built up and established thereon before the application for reissue of the Stock patent of March 18, 1884, was made; and that defendants have by proper assignments acquired

said Marqua patent and succeeded to said business.   Under such circumstances the supreme court of the United States, in several recent decisions, has clearly manifested an indisposition to allow reissues to disturb such intervening rights.   In *Lumber Co.* v. *Rodgers,* 112 U. S. 659, 5 Sup. Ct. Rep. 501, it is said that a reissue applied for after unreasonable delay, and for the purpose of enlarging specification so as to include an invention patented after original patent was granted, is void as to new claims.   If a patent claimant is ever to be concluded by his oath, and by an adverse decision on his claims, it would seem that Stock, and those claiming under him, should be by the proceedings had on the October, 1884, application.

But, however this may be, it is perfectly clear from the evidence in the case, including the testimony of H. A. West and said October, 1884, application, with Stock's oath thereto, both of which are competent on the question, that there was in fact no error in the application, specification, and claims of the original Stock patent through accident, inadvertence, or mistake such as would entitle the patentee to a reissue thereof with new and broader claims.   The testimony of West, who prepared the application, is clear and positive to the point that the specification and claims of the original patent were just what Stock instructed, desired, and intended they should be, and this evidence is not impeached or successfully contradicted.

But it is urged for complainant that, notwithstanding it put this question of fact in issue, the action of the patent-office in granting the reissue is conclusive and final on the question of the actual existence of accident, inadvertence, or mistake, where, as in this case, the application for reissue is made within two years after the date of the original patent. *Mahn* v. *Harwood,* 112 U. S. 358–360, 5 Sup. Ct. Rep. 174, and 6 Sup. Ct. Rep. 451, and *Miller* v. *Brass Co.,* 104 U. S. 356, are cited in support of this proposition, which counsel for complainants call "the new departure" on the part of the supreme court.   We do not think the cases of *Miller* v. *Brass Co.* and *Mahn* v. *Harwood* sustain the complainant's position, or that they made any "new departure" from the previous decisions on the subject of reissues, or of the effect of the complainant's action in the matter.   These decisions hold what had been uniformly held,—that, in order to secure the reissue of a patent, two things must appear or be shown:   (1) That the application for the reissue is made with due diligence; and (2) that the error or omission complained of arose or occurred through accident, inadvertence, or mistake.   What is due or reasonable diligence is a question of law, for the court, depending upon no fixed time, but upon the facts and circumstances of each particular case.   *Wollensak* v. *Reiher,* 115 U. S. 96, 5 Sup. Ct. Rep. 1137.   The action of the commissioner on either the question of diligence in making the application for reissue, or of accident, inadvertence, or mistake, was not held to be conclusive upon the courts in the cases cited, or in any case to which the attention of the court has been called.   On the contrary, in repeated decisions since *Mahn* v. *Harwood,* the supreme court has considered and passed upon the question of the

existence of accident, inadvertence, and mistake in cases of reissues obtained within two years after grant of original patents, and upon the question has considered and examined the testimony of witnesses in addition to what was shown by the patent-office records and a comparison of the original and reissued patents. Thus, in *Coon* v. *Wilson*, 113 U. S. 268, 276, 277, 5 Sup. Ct. Rep. 537, the reissue was applied for about four months after the grant of the original patent. The court said, among objections to the reissue, that "no mistake or inadvertence is shown." In *Newton* v. *Furst & Bradley Co.*, 119 U. S. 385, 7 Sup. Ct. Rep. 369, the patentee testified as to the existence of the accident or mistake which led to the application for the reissue. The court said: "No mistake or inadvertence is shown." In *Parker & Whipple Co.* v. *Yale Clock Co.*, 123 U. S. 87–103, 8 Sup. Ct. Rep. 38, the application for reissue was filed within two years from the date of original patent. The court, after citing the rule expressed in *Mahn* v. *Harwood*, 112 U. S. 354, 5 Sup. Ct. Rep. 174, and 6 Sup. Ct. Rep. 451, that a patent cannot be lawfully reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake, inadvertently committed, in the wording of the claim, and the application for a reissue is made within a reasonably short period after the original patent was granted, said:

"But a clear mistake, inadvertently committed, in the wording of the claim, is necessary, without reference to the length of time. In the present case there was no mistake in the wording of the claim of the original patent."

In *Matthews* v. *Manufacturing Co.*, 124 U. S. 351, 8 Sup. Ct. Rep. 639, the court looked not only to the specifications of the original and reissued patents, but also to the testimony of the patentee, and found as a matter of fact "no defect or insufficiency in the original specification, and no error, inadvertence, or mistake in framing it," and held the reissue invalid. In *Yale Lock Manuf'g Co.* v. *James*, 125 U. S. 447, 450–463, 8 Sup. Ct. Rep. 967, the reissue was applied for within one year from date of original patent. It was there urged by counsel (page 450) "that the finding of the commissioner of patents upon the question of fact, whether the original defect arose by inadvertence, accident, or mistake, is a conclusive one, unless the possibility of the existence of any such inadvertence, accident, or mistake is found to be excluded by an examination of the original papers," for which *Mahn* v. *Harwood* was cited. This point was not sustained by the supreme court, which affirmed the judgment of the circuit court, holding the reissue void. In the opinion of the circuit judge it was said there was no mistake, within the meaning of the words "accident, inadvertence, or mistake," which permit a reissue, as defined in *Manufacturing Co.* v. *Ladd*, 102 U. S. 408. In *Yale Lock Manuf'g Co.* v. *Berkshire Nat. Bank*, 135 U. S. 343, 10 Sup. Ct. Rep. 884, the reissue was applied for within three months after grant of original patent. The court said, (page 379, 135 U. S., and page 896, 10 Sup. Ct. Rep.:)

"Nor does the fact that reissue No. 7,947 was applied for only thirteen (13) days after the grant of the original patent establish its validity. In *Coon* v. *Wilson*, 113 U. S. 268, 277, 5 Sup. Ct. Rep. 537, enlarged claims in a reissued

patent were declared invalid, although the reissue was applied for a little over three months after the original was granted, on the ground that a clear mistake, inadvertently committed, in the wording of the claim, was necessary, without reference to the length of time."

In *Dobson* v. *Lees*, 137 U. S. 258, 11 Sup. Ct. Rep. 71, the reissue was applied for about one month after date of original patent. The supreme court said: "There is no room for the contention that there was any inadvertence, accident, or mistake in the premises,"—and the reissue was held to be invalid. In *Electric Gas-Lighting Co.* v. *Boston Electric Co.*, 139 U. S. 482, 11 Sup. Ct. Rep. 586, where the reissue was applied for after more than two years, the court held, (page 502, 139 U. S., and page 593, 11 Sup. Ct. Rep.,) from all the evidence, that there was no inadvertence, accident, or mistake, such as would authorize a reissue with new claims. The supreme court having thus repeatedly, since *Mahn* v. *Harwood* was decided, passed upon the question of fact as to the existence of mistake, inadvertently committed, after the action of the commissioner of patents in granting reissues, shows clearly that the action of the patent-office is not final and conclusive on the question. It would violate all sound principle to hold such finding of the commissioner conclusive as against intervening patentees, whose patents covered or embraced the same devices, and who had no notice of, or opportunity to resist the application for, a reissue, with claims purposely designed to overreach such prior patents.

But if the testimony taken upon both sides upon this question is laid out of view, and we look alone to the specification and claims of the original patent, or to what is called the "Record in the Patent-Office" in the case, it is equally clear that no such accident, inadvertence, or mistake in either the specification or claims of the original patent is shown, or authorized the grant of a reissue thereof with new and enlarged claims. This is undoubtedly so if we include, as a part of the record evidence, Stock's application of October 13, 1884, which we think should be done, under the foregoing authorities, as it was a "contemporary record" upon the matter involved, made by Stock, and containing his sworn statement that "the invention of a clamping device, pivotally secured to the end of the throwing arm, provided with mechanism to automatically release the target, substantially as specified," was a new and distinct invention, which had never, to his knowledge or belief, been patented to himself or others. He and his representatives and assigns should be concluded by this sworn, recorded declaration, which is in perfect harmony with the specification and claims of the original patent, which did not attempt to secure what is covered by the enlarged claims of the reissue. We are accordingly of the opinion that there was no error or mistake, inadvertently committed, in the original patent, on which to warrant or authorize the reissued letters of September, 1887.

Again, the court is satisfied from the evidence, and a comparison of the original and reissued letters patent, that claims 3 and 4 of the latter are not for the same invention as that embodied in the original patent, but are for a different device or invention, which might have been and

was in fact made the subject of a distinct application by the patentee in October, 1884. The sole object and purpose of the original patent, as clearly shown by the specification and claims, was to secure the invention embodied in the holding and releasing devices, especially the latter. The object and purpose of the reissue was to secure the invention embodied in the pivotal feature of the holding device. This pivotal arrangement or device is the real bone of contention. Claims 1 and 2 of the original patent are repeated in the reissued patent. Neither of them embrace or include the pivotal device sought to be covered by claims 3 and 4 of the reissue. It is shown that no target traps constructed in accordance with the drawings and said claims 1 and 2 of the original and reissued patents were ever manufactured, or sold, or offered for sale by either Stock or the complainant, his assignee. The holding and releasing devices shown in said drawings and claims 1 and 2 were practically abandoned for other devices made by Stock after the grant of the original patent, until, in the course of improvements in target traps, it became desirable to use them as the means to include the "pivotal" device sought to be covered by claims 3 and 4 of the reissue. In order to accomplish this afterthought, important changes are made in the original specifications when the reissue is applied for: Thus, in line 10 there is inserted the word "pivoted" before the words "swinging or throwing arm." In the original specification it is said that "the invention consists in the employment of a novel device at the outer end of the throwing arm for holding the target, the same being adapted to retain the target during the swing of the arm, and to release it at the proper time for causing it to be properly projected into the air." In the specification of the reissue the words, "and to release it at the proper time for causing it to be properly projected into the air," are omitted; and there is inserted the following:

"The object of the invention is to produce a trap capable of giving a more even flight to the target than is attained from traps now in use, by imparting to the target as it leaves the trap an impulse or motion independent of that which it receives from the throwing arm thereof, in securing this device to the arm so as to permit an independent rotary movement of the device on the arm, and in providing automatic means or mechanism on the throwing arm for releasing the target."

The original specification describes the operation of the machine as follows:

"The centrifugal force of the target, imparted by the rapid swinging of the arm, A, will (gradually) turn the plate, $a$, upon the hinge pin, $a^2$, as the arm, A, proceeds until the direction of the centrifugal force comes in line with the slot, $d$, in the outer end of the arm, A, whereupon the lower end of the tongue, $c$, will be forced back of the friction spring, $f$, which will permit the plate to drop down to the position shown in full lines in Fig. 2, and in dotted lines in Fig. 1, and thus release the target. The slot, $d$, being made in the line of the length of the arm, A, it will be seen that the clip, B, will not release the target until the arm, A, reaches the end of the swing, so that the target will receive all of the propulsive force of rapid swinging of the arm, save that which is lost in overcoming the friction of the spring, $f$."

The reissue specification omits the word "gradually," and adds new descriptive matter not necessary to be noticed. It will be seen from the foregoing that the specification of the reissue, contrary to the express provision of the law, (section 4916, Rev. St.,) introduced important new matter in order to lay the foundation for and to secure the new patentable device or invention covered by claims 3 and 4 of the reissued letters in suit. In *Parker & Whipple Co.* v. *Yale Clock Co.*, 123 U. S. 99, 8 Sup. Ct. Rep. 38, the court, after quoting the language employed in *Seymour* v. *Osborne*, 11 Wall. 516, say:

"In what is there said about redescribing the invention, and about including in the new description and new claims what was suggested or indicated in the original specification, drawings, or patent-office model, it is clearly to be understood, from the entire language, that the things so to be included are only the things which properly belonged to the invention as embodied in the original patent; that what that invention was is to be ascertained by consulting the original patent; and that, while the new description may properly contain things which are indicated in the original specification, drawings, or patent-office model, (though not sufficiently described in the original specification,) it does not follow that what was indicated in the original specification, drawings, or patent-office model is to be considered as part of the invention unless the court can see from a comparison of the two patents that the original patent embodied, as the invention intended to be secured by it, what the claims of the reissue are intended to cover."

The conclusion having been reached from the evidence and a comparison of the original and reissued letters patent in the present case that the former did not and was not intended to embody, as the invention therein described and sought to be patented, what claims 3 and 4 of the reissue are intended to cover, said claims 3 and 4 of the reissue must be declared invalid. What is further said by the court in the said case of *Parker & Whipple Co.* v. *Yale Clock Co.*, at pages 101, 102, 103, and 104, 8 Sup. Ct. Rep. 38, and in *James* v. *Campbell*, 104 U. S. 356, and in *Manufacturing Co.* v. *Ladd*, 102 U. S. 408, 411–413, not only sustain our conclusion in the premises, but fully meet and answer the theory on which complainant's counsel seek to sustain said claims 3 and 4 of the reissued patent.

It is not deemed necessary to discuss or to determine the question as to whether the Marqua patent of July, 1884, the invention of which may fairly be fixed as of the date July 10, 1883, antedated Stock's invention of the "pivoted" device. The evidence on the point is not sufficiently clear to enable the court to reach a satisfactory conclusion. But it is established clearly, and to the entire satisfaction of the court, that A. H. Hebbard conceived and reduced to practice the "pivoted" clamping or target-holding carrier prior to December 8, 1882; that said Hebbard's device is shown in the little brass model, which is the identical model made by him in October, 1882; that within about one month thereafter a full-sized device was constructed, and operated successfully and publicly in the presence of several persons. This Hebbard device, called in the record "Hebbard's Third Target-Throwing Device," shows substantially the "pivoted" feature of the target holder sought to be covered by claims 3 and 4 of the reissued patent, and, having been conceived and reduced to successful public practice prior to December 8,

1882, anticipated Stock's invention of the same device, which the proof in its most favorable aspect for complainant shows was not reduced to even experimental practice before January, 1883. The evidence establishing this Hebbard third target-throwing device, and its successful use on a Ligowski trap prior to Stock's invention, is not contradicted or impeached, and if human testimony, corroborated by the production of the original model, is to be believed, that fact is established that Stock's "pivotal" device was anticipated by that of Hebbard.

It is not claimed that there is any infringement of the second claim of the reissued letters patent, and the sole remaining question is whether defendants' machine infringes the first claim of said patent. We are clearly of the opinion that it does not. In view of the state of the art, as disclosed in defendants' several patent exhibits, Stock cannot be regarded as a pioneer inventor, whose claim should be broadened by construction. He was only an improver. His first claim is for a specific device including in its combination with the throwing arm of a target-throwing device, first, "a clip for holding the target, arranged to automatically drop below the surface of the throwing-arm for releasing the target substantially as described." By this reference to the method or means of releasing the target, we are thrown back to the specification, and find that it consists in a slot or recess at the end of the throwing arm, into which the clip holding the target is designed or intended to fall or slide in order to "drop below" the surface of the throwing arm. This makes the slot or recess an element in the claim, under the well-recognized rule which is clearly stated in *Fay* v. *Cordesman*, 109 U. S. 408, 3 Sup. Ct. Rep. 236, as follows:

"The claims of the patent sued on in this case are claims for combinations. In such a claim, if the patentee specifies any element as entering into the combination either directly, by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination; and the court cannot declare it to be immaterial. It is his province to make his own claim, and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality."

The defendants' machine clearly does not contain the elements, or their equivalents, of the combination found in the first claim of the reissued letters patent sued on, nor is the operation thereof the same. It is not material to consider the suggestion made by complainant's expert Dayton, that said claim would cover any releasing device that would move at right angles to the plane of the throwing arm, for even on that construction there would be no infringement by defendants' machine.

Our conclusions (in which Judge RICKS concurs) may therefore be summarized as follows:

1. That defendants do not infringe the first claim of the reissued letters patent sued on.

2. That claims 3 and 4 of said reissued letters patent are void, because there was no accident, inadvertence, or mistake in either the specifica-

tion or claims of the original patent, and because said claims cover patentable inventions which were not embodied or intended to be embodied in the original patent, but are for new and distinct devices, which formed the subject or distinct patents.

3. That if said claims 3 and 4 constituted valid reissues, the device they describe and seek to have patented was first invented—that is, conceived and reduced to successful public practice—by A. H. Hebbard, prior to the date at which Stock invented his pivotal device, and consequently no valid patent thereon could be issued to said Stock either under the original or reissue application.

It therefore follows that complainant is not entitled to the relief sought by its bill, and that its suit should be dismissed, with costs to be taxed. It is accordingly so ordered and adjudged.